Court Clerk,

Please file document w/ green tab on Crim Docket No 18-193-03 to the Honorable Nitza I Quinones-Alejandro.

Please file document w/ orange tab as a new case.

Thank You,

Anthony Jones.

Can you also send me the cost of a copy of recently filed Motion for Downward Variance & Time Served Credits on Crim Docket No 18-193-03 and a blank Complaint for violation of Civil Rights packet w/ In Forma Papuris forms

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

# UNITED STATES DISTRICT COURT

### for the

Eastern District of Pennsylvania

|  |  |
|---|---|
| ANTHONY W. JONES, II | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |

*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

EDUCATION SUPERVISOR EVANS, et al

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $50) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915. A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months. See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid. See 28 U.S.C. § 1915(b). **A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.**

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Anthony W. Jones, II |
| All other names by which you have been known: | aka "Ears" |
| ID Number | 69850-066 |
| Current Institution | FDC Philadelphia |
| Address | P.O. Box 562 |
| | Philadelphia          PA          19105 |
| | *City*          *State*          *Zip Code* |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Ms. Evans |
| Job or Title *(if known)* | Education Department Supervisor |
| Shield Number | Unknown |
| Employer | FDC Philadelphia |
| Address | 700 Arch Street |
| | Philadelphia          PA          19106 |
| | *City*          *State*          *Zip Code* |

[X] Individual capacity  [X] Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Ms Nelson |
| Job or Title *(if known)* | Education Department Secretary |
| Shield Number | Unknown |
| Employer | FDC Philadelphia |
| Address | 700 Arch Street |
| | Philadelphia          PA          19106 |
| | *City*          *State*          *Zip Code* |

[XX] Individual capacity  [X] Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Attorney Gallagher |
| Job or Title *(if known)* | Senior Institution Attorney |
| Shield Number | Unknown |
| Employer | FDC Philadelphia |
| Address | 700 Arch Street |
| | Philadelphia        PA        19106 |
| | *City*                *State*        *Zip Code* |

[X] Individual capacity   [X] Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Unit Manager Cole |
| Job or Title *(if known)* | Unit Manager |
| Shield Number | Unknown |
| Employer | FDC Philadelphia |
| Address | 700 Arch Street |
| | Philadelphia        PA        19106 |
| | *City*                *State*        *Zip Code* |

[X] Individual capacity   [X] Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

[X] Federal officials (a *Bivens* claim)

[ ] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
1st Amendment--Right to a public trial
1st Amendment--Access to Court, 6th Amendment--Unhindered
Defense and Right to Effective Self Representation, 14th
Amendment--Due Process, 18 U.S.C. § 3006A, 14th Amendment--
Equal Protections, Procedural and Substantive Due Process
Infliction of Unconstitutional Punishment and Retaliation

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?  Same as above in section II-B

Defendants Continued:

Name: AW Justice
Title: Associate Warden of Programs
SHield Number: Unknown
Employer: FDC Philadelphia
Address: 700 Arch Street
          Philadelphia, PA 19106
Suit brought under both Official capacity and Individual capacity

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

       See Attached page entitled "Actions Under Color of Law"

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

[x]    Pretrial detainee

[ ]    Civilly committed detainee

[ ]    Immigration detainee

[ ]    Convicted and sentenced state prisoner

[ ]    Convicted and sentenced federal prisoner

[x]    Other *(explain)*    Convicted however not sentenced

## IV.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

       See Attached page entitled "Facts"

Actions Under Color of Law:

1. Defendant Evans implemented and enforced a discrimanatory
   unconstitutional policy under the authority given as an
   employee of the United States D.O.J. B.O.P.

2. Defendant Nelson being aware of the unconstitutionality of the
   implemented policy enforced the policy by denying plaintiff
   copies, failing to act, and ignoring the continuous request
   and notice given thru emails under the authority given as an
   employee of the United States D.O.J. B.O.P.

3. Defendant Gallagher being fully knowledgable of the laws of
   the United States and Code of Federal Regulations was given
   sufficient notice of the unconstitutional policy and practice
   and with deliberate indifference affirmed and subordinated
   the policy under her authority as an employee of the United
   States D.O.J. B.O.P.

4. Defendant Cole given sufficient notice of the unconstitutional
   policy and practice having authority and the duty to correct
   and/or prevent the violation of the secured rights with the
   deliberate indifference failed to act, affirmed and
   subordinated the policy under his authority as an employee
   of the United States D.O.J. B.O.P. New: Used position to gather
   information from co-defendant's records to base the enforcment of
   PS 5265.13 in retaliation for Mr. Jones actions of seeking the
   court for funds to pay for unconstitutional policy imposed on
   photocopies.

5. Defendant Justice aided and abbetted the conspiracy to violate
   the plaintiff's civil rights by using authority to effectively
   deny access to TRULINCS email messaging program  in retailation
   for plaintiff seeking redress of grievance from the court. Also
   as direct supervisor of both Defendant Cole and Defendant Evans
   affirmed unconstitutional policy hindering plaintiff's criminal
   defense. All as an employee of the United States D.O.J. B.O.P.

Facts:

Date unknown however prior to the COVID-19 outbreak on housing unit 4-North. At mainline Mr. Jones approached Ms. Evans from the side to inquire about something however upon beginning to speak Mr. Jones was stopped and ordered to properly greet her by saying hello or any greeting simular and then ordered to button his jumper all the way up and stand, with sufficient spacing, face to face in order to speak to her. (mainline is when prison officials all gather in the unit day room to answer concerns and questions posed by inmates of that unit once a week. Officals are usually spread out in a sparadic fashion and there is never any particular order in which inmates are required to approach or speak to officials however normalcy and respect is usually given without question.) Mr. Jones, feeling offended by Ms. Evans' unusual demands, asked Ms. Evans in a polite manner to "excuse his back" and walked away from her.

Later in or about the winter of 2020-21 Mr. Jones inquired Ms. Evans about copies of items obtained from his discovery such as facebook business records that highlighted pictures and written conversations. In which Ms. Evans viewed the material and said these are not "legal" and due to that and the fact that Mr. Jones' name was not depicted on it she would not provide copies. Mr. Jones then told her that the records, though not stating his name, were from his discovery and were relevant to his case and that he needed copies to attach them to a motion he had planned to file to the court as exhibits. (Mr. Jones was filing an ex parte motion that he had hand written and did not require copies on the motion) Ms. Evans directed Mr. Jones to inquire Unit Team to provide the necessary copies because she was not copying things unless they were "legal."

Mr. Jones then went to his unit counsler to obtain the necessary copies for his motion. He explained what had happened with Ms. Evans and also explained to the counsler that he believed she was giving him a hard time due to her disliking Mr. Jones as a person.

On November 22, 2022 the court in Mr. Jones' criminal case, 18-CR -193-03 E.D. Pa., upon motion of the Gov't struck doc. #'s 499 and 502 for failure to comply with provisions of 18 U.S.C. § 3509(d) by filing exhibits and arguments revealing the identity of a child. In the court's order the court stated that Mr. Jones "may refile redacted or revised versions" of the motion to comply to the law protecting child victims.

On or about April 1, 2022 after completing the above mentioned revised motion Mr. Jones sought his unit counsler to provide him with the 3 necessary copies of the motion so that he could 1) file two copies on the court 1 redacted and 1 not as the exhibits contain actual photographs of the victims; 2) serve the prosecution a copy; and 3) retain a copy for his own records. Upon seeing the volume of the motion which was 150 pages in total

Mr. Jones' counsler stated that it was too much to copy and that
he could get in trouble because it was the education department who
is responsible for providing copies. Mr. Jones reminded his
counsler of the contempt Ms. Evans held towards him and stated that
he knew she was not going to make his copies. Mr. Jones knowing
that his counsler had consistently provided him copies free of
charge did not argue or press the issue with his counsler.

On April 5, 2022, on the scheduled day to request copies Mr. Jones
approached Ms. Evans and requested 2 copies of his motion. (Mr.
Jones requested 2 copies knowing he had to pay and did not have
but $5 in his commissary account and did not know when any other
money would be given to him by family and friends. He had planned
to sacrifice having a copy of his own for his records) Ms. Evans
immediately began to flip through Mr. Jones' motion and viewing
the exhibits and stated "this is too much I will not copy all this"
Mr. Jones then stated "I'm paying for it why does that matter?" Ms.
Evans then, while continuing to view the material, stated "we went
thru this before I told you that I do not copy these types of things"
Mr. Jones then stated "well where is the rule written down that
says exhibits to motions cannot be copied?" She replied "in your
inmate handbook." Mr Jones then went to his cell and retrieved his
handbook and attempted to hand it to Ms. Evans and asked her to
show him the rule she was citing. Ms Evans then she said do you
have proof of needing so many copies. Mr Jones then went back to
his cell and retrieved the court's order striking the original
motion, and upon Mr Jones coming back to the table Ms Evans was
standing at reviewing his motion she asked him was a particular
exhibit a PSR (the exhibit was grand jury transcripts) in which
Mr. Jones stated no and expressed discontent that Ms. Evans was
reviewing his legal material. Ms. Evans in a sort of comprimise
stated that she was going to take Mr. Jones' motion to the legal
department and allow them to review it to give her authority to
make the requested copies by stating "I'm going to take this to
Ms. Gallagher to see if this stuff is legal and if she says ok
then I'll make the copies if not I'm not copying it." Then Mr.
Jones stated that he did not want any other person to review his
motion citing both that the content of the motion was protected
material and that he did not trust the legal department due to
her constant communication with the U.S. Attorney's office. Ms.
Evans then left with Mr. Jones' motion. (It should be noted that
the first page of Mr. Jones' motion that he requsted to be copied
was the title page highlighting the case name, USA v A. Jones, and
the case number, and the title...Motion to Dismiss the Superceeding
Indictment. And the last page of the stack of paper was an unsigned
certificate of service. All exhibits were enumerated by cover
pages stating "Exhibit "1"" leaving no legitimate reason for MS
evans to be reviewing the content)

Also on April 5, 2022 Mr. Jones filled out a bp-8 administrative
remedy form citing Ms. Evans prejudicial treatment of himself
as she never gives that type of scrutiny to any other inmates when
they request legal copies. And requesting that Ms. Evans be trained
on what legal writings look like and how it is wrong for her to be
classifying what is and what is not "legal." Then turned it in.

On the morning of April 6, 2022 Ms Evans came to the unit and called
for Mr Jones and took him to her office and began to explain to
him that she would only be able to provide one copy of the motion
because he did not have enough funds in his commissary account. Mr
Jones in astonishment was silent and Ms Evans then attempted to
order him back to the unit stating "com'mon go'head back since you
just standing there unresponsive." Mr Jones then stated "can I
think? Am I allowed to think?" He then said "I never had this issue
before." That usually when Mr Pertucci makes copies he just makes
me sign for the cost and later applies it to my commissary account
and if the money isn't there my account just goes into the negetive
until I get some money put on my books." Mr Jones continued on to
say " samething with medical if I go to sick call they apply the
$2 co-pay to my account and if the money is not there then my
account just goes into the negetive. Either way you still get your
money. I've never been required to have the money up front because
usually the money never comes off my account until days later after
I get the copies." Ms evans then stated "I don't know what medical
do but not my department, my department ain't applying no debt to
your account." Mr Jones replied "yes your department." Ms Evans
said " do you want the copy or not" and Mr jones said "yes but we'll
figure it out because your supposed to give me the copies and just
charge my account no one ever checked my account before giving me
copies."

On April 6, 2022 after the incident in Ms. Evans office, in the
previous paragraph which was viewed in full by Ms Nelson and the
education cleaning orderly, Mr Jones immediately began another
bp-8 citing the new rule Ms Evans came up with in order to justify
the reason she did not want to give him copies. In the bp-8 Mr.
Jones cited authority from 28 C.F.R. § 543.11, the 6th Amendment
right to an unhindered defense, the 1st Amendment right to access
to the courts, case law United States v Janis, 820 F. Supp 512,
(S.D. Cal. Oct. 27, 1992). Mr Jones then asked that Ms Evans be
suspended for her actions because he was a Pro Se litigant and the
law required he be provided copies and that Ms Evans was aware of
those facts as well. When Mr. Jones went to turn in the bp-8 his
unit counsler was not available and he gave it to his unit case
manager Mr. Mendek in which Mr. Mendek stated that he would put
it in Mr. Flanary's mailbox for him to turn in. After quickly
overviewing the bp-8 and hearing Mr, Jones explain everything that
led him to file a 2nd bp-8 Mr. Mendek suggested that Mr. Jones
bring the situation to Ms. Evans' boss AW Justice.

On April 6, 2022 around 11AM Ms Nelson came to the unit and provided Mr. Jones with his original and the one copy promised to him and had him sign for the cost of the copies which was $21.60 well over the $5 he had in his account.

On April 6, 2022 around 1:30 pm Mr Jones logged onto his trulinc account to purchase trulincs so that he could email family and friends to request some money to get the rest of his copies made and upon making that purchase he noticed that he had a gift of $35 from a friend. This gift was unexpected. Happy for the money Mr. Jpnes logged of and told a friend about the unexpected gift. Mr Jones' friend asked did he tell Ms. Evans about the money so he could he the copies, Mr Jones said to him no but thats a good idea but he knows she isn't gonna come back and get his motion. Mr. Jones around 3pm emailed Ms. Evans and asked was he now authorized to get the copies made highlighting his unexpected gift of $35 (see Exhibit "1"--copy of unanswered email to Ms. Evans)

On April 6, 2022, Mr Jones filed a Motion for Leave and Funds for Photocopies citing the events that took place on the 5th and 6th of April requesting the court grant leave to file his motion for a new trial based on newly discovered evidence due to him not knowing if he was going to be able to get the requisite copies necessary to file a redacted version as the very evidence that was newly discovered also revealed the identity of the child victim and now him recieving copies was dictated on the amount of money in his commissary account.

*OUT OF PLACE FACT* When Ms. Evans told Mr. Jones that he could only recieve one copy she stated her reason was that he did not have enough money to cover the cost and that he was not considered indingent because he had money on his account within the past 90 days. (the B.O.P. uses a different system to classify inmates indingent then the Courts).

On April 7, 2022 after waiting all day for a response to his email sent to notify Ms. Evans of the new money in his account and not recieving a response Mr. Jones again emailed Ms. Evans reminding her of the looming deadline and notified her that I had peptitoned the court for an extension of time however that the request was also cutting it close due to the new money rule. Mr. Jones highlighted the fact that the original fee for the one copy had not been applied to his account evidencing that the money issue couldn't have been the reason for not getting the copies he needed and that he would pursue redress in the court if need be. (See Exhibit "2"--email to Ms. Evans on 4/7/22)

On Friday April 8, 2022 Mr Jones went to his unit counsler, Mr. Flanary, and told him about the unexpected money and how Ms. Evans was doing what she was doing due to the fact that she does not like him, he informed him that he had emailed her and told her about the

upcoming deadline. Mr. Flanary then stated to Mr jones that he
needed to bring the issue to Ms. Evans boss at mainline. Mr
Jones then asked Mr. Flanary for copies of his motion for new trial
and showed Mr. Flanary that it was no where near the size of his
motion to dismiss the superceeding indictment. Mr Flanary then
agreed to make copies for Mr. Jones on Monday the 11th so that he
could make the mailbox filing rule deadline. Mr Flanary also
told Mr. Jones that he was not going to file his 2nd bp-8 stating
that it was the same issue and that he did not wait for a response
from the 1st bp-8 he filed. Mr Jones then explained to Mr Flanary
that it was not the same issue that the 1st one was in regards to
Ms. Evans showing his motion to different staff members who have
no need to view it and how she was discriminating against him, and
the second one was about the money rule she came up with, how he
is a pro se litigant, how he is deemed unable to afford counsel
by the court, and how it is illegal to base providing copies of
his pleadings on having sufficient funds. Mr Flanary said that he
was not going to file his 2nd bp-8 and reiterated that it was the
same issue.

On April 11, 2022 at 8:25am after noticing that Mr Flanary had not
came in Mr. Jones sent a third email to the education department
this time addressing it to "anyone who has time" and again requested
copies of his motion for a new trial citing his deadline and his
status as a pro se litigant and his responsibilities on filing
in compliance with 18 U.S.C. § 3509(d) (See Exhibit "3"--3rd email
sent to education department)

On April 11, 2022 around 10am Mr Flanary came to the unit and
provided Mr Jones with copies of his motion for a new trial.

On April 12, 2022 at mainline, noticing AW Justice was not in
attendence Mr. Jones went to FDC Attorney and legal dept supervisor
Ms. Gallagher with his motion to dismiss in hand asked her if she
had in fact seen his motion and showed her the motion in a folder.
She then said "what motion? are you talking about from education?"
Mr Jones answered yes in which Ms Gallagher said she had in fact
seen it but denied actually reading it. Gallagher stated that she
gave authority to give copies knowing that the material was
consistent with that of my case and her knowledge of my case led
to her being able to easily make that determination. She then asked
of Mr Jones did he actually recieve his copies and Mr Jones then
informed her that he did not due to him not having sufficient funds
in his commissary account. Then Ms Gallagher then stated that she
did not have anything to do with that. Mr. Jones then told Ms.
Gallagher how he knew she was not allowed to deny him legal copies
based on funds as federal regulations order copies to be given
upon request. Mr. Jones then went to Unit Manager Cole and asked
if he could provide copies of the motion due to Ms Evans refusal.
Mr Jones classified this refusal as "giving him a hard time." Mr
Jones explained to Mr Cole that Ms Evans was basing her decision

to deny Mr Jones copies was due to him not having sufficient
funds. Mr Cole stated that he was going to ask the legal department
about the issue, he then walked to Ms Gallagher and had a conversa-
ation (content unknown) and then he walked to Ms. Evans and spoke
to her(conversation content unknown) then he walked back to Mr.
Jones and affirmed that Mr. Jones could not be provided the copies
if he did not have the money to pay for them. He stated that Ms.
Evans claimed that Mr. Jones wanted some type of credit and that
thats not how "it works." Mr Jones stated to Mr Cole that
essentially he was being denied presenting his motion to the
court because of not having enough money for copies on his
account. Mr Jones said that the position that they were taking
left him filing his filings up to the movement of people outside
of the jail as he has to rely on family to send him money even if
he had stockplies of it on the street. Mr Cole then reasoned that
it is not based on not having money because he would provide free
copies if Mr Jones was indingent however due to Mr Jones having h
had money and spending it on other things such as chips and sodas
on commissary that Mr Jones had made poor decisions by not saving
or spending his money on the copies, that he knew he was going to
need the copies so he should have not spent his money on commissary
Mr Jones then explained to Mr Cole that even if he had the money
for the copies on the tuesday that he request them and hypothetically
went to commissary on wendsday and spent the money that was in hi
account on food the money would be gone by friday when the education
would apply the cost of the copies and that his commissary account
would simply go into the negetive and that when he had more money
hit his account it would be taken for the balance of the copies.
Mr Cole replied "oh I don't know about that" Mr jones replied "no
I'm telling you what has happened to me in the past when I didn't
have money for copies or for sick calls" Cole then said yes but
you have had money so your not indingent. Then Mr Jones then said
"what you are saying does not make any sense because if I had the
same $5 for a whole year then I would be denied copies because
I dont have enough money." Mr Jones tired of trying to plead his
case to deaf ears asked Mr Cole is that the final position on the
issue and Cole answered in the affirmative. Before Mr Jones could
give the motion to Ms Evans for copies all the officials had left
the unit.

On April 12, 2022 after mainline was over Ms Evans came back on t
the unit for another inmate and Mr Jones approached her and asked
if she was going to finally make the copies? She then took his fo
folder containing the motion and said do you have money in your
account? He said yes she then asked how many copies do you need in
which he said 2. She then said is that enough to cover the cost.
Mr Jones then said he only had $38 in his account and that he didn't
think so. She then said "well I'm only giving you what you can pay
for. Not knowing if she meant she would give a full copy and a pa
partial copy taking his entire $38 or if she would only supply
one full copy at the $22 price Mr Jones simply declined to comply
with her self made policy and asked for his motion back. Then walked
away.

Mr Jones knew he was actually innocent when deciding to proceed to
trial on the charges he is currently incarcerated. His then attorney
never provided discovery for review blaming the courts protective
order and did not visit mr jones enough to provide sufficient
review of his discovery and the 3-4 visits he never allowed Mr. Jones
to review discovery. Mr Jones in march of 2020 after previously
requesting a substitution of counsel waived his right to counsel
and proceeded pro se the court granted his request in part by
appointing current stabd by counsel as counsel. Current stand-by
counsel provided a review of discovery material and that review
confirmed Mr Jones' suspicion that the gov't was aware that he
was innocent and presented what they knew to be false to not
only the grand jury but as well to the magistrate to secure pretrial
detention and later to the trial judge in pretrial motion hearings
and to the jury at trial. Mr Jones wishing to present the proof
of this illegal misconduct on behalf of gov't actors to the court
aksed counsel if he would be willing to file a motion to dismiss
based on innocence and this misconduct, in which counsel stated
that his course of action would be simply preparing for sentencing
and appeal because he knew that the judge would not reverse the
jury verdict. Mr Jones then reiterated to the court of his wish to
proceed pro se based entirely on counsel's decision to for go filing
the requested motion. On Sep 2, 2020 Mr Jones was appointed pro se
officially and every filing he has made since that date was in
preperation of the Motion to dismiss the superceeding indictment
that he currently cannot file due to not having enough copies of
the motion to make the required redactions and supply the court
with an unredacted copy. Mr Jones can file the motion under seal
however he feels it is very imporant that the public be able to
view his motion highlighting the actions of the gov't in concert
with the alleged victims who have abused the legal process and is
in  line to recieve substantial gov't funds due to being considered
victims of human trafficking when in all reality they have lied
to gain that status and how an FBI agent has used the legal process
to enact revenge on a man who spit in his face. Mr Jones wants to
do nothing more than prove his innocence. This motion to dismiss
is an acumulation of everything Mr Jones has studied and work for
since march of 2020.

As the Education Department Secretary Ms Nelson is the person who
1st views "request to staff" emails from inmates and relays them
to the named individual staff member that the email is addressed
to. This information was previously provided by Mr Cooper when
asked did he recieve an email that I had sent him in which he
stated that he did not recieve the email because Ms Evans has
Ms Nelson reviewing everyone in the department's emails to micro
manage everything going on in the departmnent.

On the morning of April 13, 2022 Mr. Jones' friend sent him monies for food and soap as he had not been to the store(commissary) in about a month as the last time his unit went to commissary was 3 weeks prior and on that day mostly all items were out of stock. Mr. Jones had followed protocol by placing his commissary sheet marking his requested items in the folder that the commissary officer leaves on the unit the night before.

On April 13, 2022 around 11am Ms. Evans came to the unit and requested Mr. Jones to give her the item he needed copied ans ask how many copies he needed in which he told her 2. Thinking his filed grievance reached Ms Evans' supervisor Mr jones thought Ms. Evans realized or was told that her actions were wrong. About a half hour later the unit officer ordered Mr. Jones to get his mask and come out in the hallway. Ms Evans was present and while showing Mr. Jones a printout of his account transactions began to explain why she had again not copied his legal material. Mr Jones in complete frustration asked Ms Evans "are you playing some type of game with me? Do you think I am a toy? Yesterday you said you was not going to make the copies." Ms Evans tried to begin reasoning and explaining to Mr. Jones that he had money earlier in the morning however he spent it all on commissary. That he should have saved some for his copies. Mr Jones cut her short and stated that she made it clear the day before that she was not going to make the copies because the money was not present on his account. He explained that the day before he washed his hands of the copy issue due to her denying him. He said to her " I did not ask you to come ask me to make the copies." Feeling offended he asked her to leave him alone and stated to her "because now you are trying to tell me how to spend my money its my money and I can do what I want with it."

On April 13, 2022 immediately after the incident with Ms. Evans Mr. Jones went to the counsler's office to have him sign the informa pauperis application of this complaint. Case Manager Mendek was also in the office and stated to Mr. Jones that "Cole called and said you're hit for those copies, that you had money this morning but you spent it all on commissary." Mr Jones calmly said "ok." Then he asked Mr Flanary to fill out the form and sign it. Mr Flanary began ranting about how Mr Jones was trying to manipulate the system to work in his favor. Then in an effort to legitimize the situation Flanary stated that Mr Jones should be happy that Mr Cole tried to get my copies made by informing Ms Evans that you had money in your account, and that he should not had of spent it all on commissary knowing you need copies. Mr. JOnes then stated to an inmate standing in the room "these people think they are financial advisors." Mr Jones told Flanary that if Ms Evans had given him the copies when he requested them and applied the cost aka debt encumberance to his account then she whould have had her money last week. Mr flanary then said "thats not how it works." Mr Jones thensaid "ok" and began to walk out of the office and heard Mr Flanary say "you're gonna lose."

On the evening of April 13, 2022 Mr Jones was explaining what had happened with Ms Evans and Cole earlier to a group of inmates in which Mr Darrell Wylie had stated in response to having heard Mr. Jones story that "thats wild she copied my transcripts of my trial and never charged me anything and that was over 700 pages. And she did the same for my co-defendant." Mr. Jones said "wow are you serious?" He replied "yeah!" Mr Jones then said " I need you to make an affidavit are you wit it?" He said "yeah, what saying that she gave me copies and didn't charge me? Ok but if she turn around and charge me then thats on you." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

On April 6, 2022 when Mr Jones was told that he could only recieve one copy instead of the necessary 3 and however only requested 2 copies due to only having $5 in his account Ms Evans provided one copy that cost $21.60. Later in the day $35 was added without Mr. Jones' knowledge in which Mr. Jones emailed Ms Evans that entire week asking for the copies. The next week after being ignored and having an account ballance of $38 on April 12, 2022 with the $38 balance Mr Jones was denied when he requested 2 copies after Ms. Evans was affirmed and justified by the Unit Manager and the FDC Attorney. Again Ms Evans only would supply one copy based on the $43.20 cost of two copies a difference of $5.20. Then on the morning of April 13, 2022 upon seeing Mr. Jones' account balance of $173.57 Mr. Cole and Ms. Evans rush to Mr Jones to make copies. Then upon learning that the commissary department had withdrawed $156.85 then they changed their minds about providing copies.

The culture and the mentality of the staff in this building is that the inmates are never right no matter how wrong the staff members are. Staff do not respect the internal grievance system and openly retaliate against inmates who utilize the system. Staff taunt the fact that the grievances filed amount to nothing but a blue piece of paper. And some believe that they are here to inflict pain and punishment on any who comes thru the door in hand cuffs. I have been biased and sterotyped by several staff member over the 3 years I've been here. I have had a staff member say "don't say nothing to me you're a sex trafficker." I have had a staff member say to me that other staff members told her "oh that old man Jones in 23 cell watch him cuz he dont like women...you know what he here for right?" This same staff member who was new and would not inform me of who actually said those things to her admitted that in my defense she stated back to her "I'm suprised to hear that because he never gives me any trouble." The 3553(a) factor of promoting respect for the law is critically undermined by B.O.P. staff who, in the face of the people who are to be rehibilitated, blantly disregard all the laws and regulations put in place to futher justice.

Facts Continued-(Events that took place after 4/13/22)

1. On 4/15/22 Unit Counseler Flanary returned various filed BP-8s including the rejected form addressing claims in this suit.

2. On 4/18/22 while speaking with Case Manager Mendek about an unrelated matter, as he was looking at his computer screen, he said "its funny your standing here, but did you file a motion to the court saying that me and Flanary give you free copies?" I replied "yes I did." In which Mr. Mendek then stated that "per his supervisor he and Flanary are no longer allowed to provide copies to any inmate under any circumstances all legal copies must go thru the Education Dept and inmates must have sufficient funds to cover the cost of the copies prior to them being made."

3. On 4/19/22 I asked AW Justice had she had a chance to review the email that I sent her. She said that she had not. I then told her that I was having an issue with recieving legal copies and her immediate reply was "what unit team ain't giving them to you?" I then said that I had previously went to unit team about the issue and that I would just wait til she had read the email. She attempted to direct me to get an answer from Defendant Cole in which I again declined and said I'll wait until she reviewed the email I sent her and wait for a reply. In which she agreed.

4. On 4/19/22 after mainline Case Manager Mendek handed me a Trust Fund Limited Computer System Exclusion form and stated that Defendant Cole directed him to have me sign it. Upon seeing it I read it and reasoned that it was based on a reason that is not supported by the actual policy. I asked Mendek how could they take my email prividledges when I pose no realistic threat to the public and how was a determination made base on the contents of other inmates PSRs and a article in the newletter from the Eastern Dist of PA U.S. Court. I said that the information used to make the conclusion is not sufficient and I said that because I have not yet been sentenced and that the BOP does not even have a PSR for me the conclusion was based on speculation. I left then came back I asked for a copy of it and Mendek then said he had to get authorization before providing me with a copy. So I asked him if I could simply hand write the contents on the form on another piece of paper. He allowed me to as I was copying the contents I stated to Mendek that its funny how all of a sudden after Ive been using the email for 3 years after my conviction and that I have not seen any other inmate lose their email until they were actually sentenced. He then stated "this is what they are gonna say...they are gonna tell you to take it up with your next jail and see if they will give it back to you." I thenagain asked for a copy and said that I was going to report this to the court as conviction is not final and the FDC staff has no authorization to implement punishments and its clear retaliation.

Mr. Mendek did provide me with a copy of the form. 

5. On 4/19/22 I recieved a copy of the courts order in response to the Motion for Leave and for Funds for Photocopies ordering th Government to respond to my motion by 4/22/19. Upon seeing the order it dawned on me that it was the prosecutor who contacted the jail in particular Defendant Gallagher the FDC Attorney inquiring about the allegations contained in my motion. Who then informed Defendant Cole about the contents of the motion who then reprimanded Mendek.

6. On 4/19/22 I searched for the official policy statement that controls the exclusion of the email system to see when it could be enforced, if it could be enforced prior to an inmate actually being sentenced. I then learned that policy statement 5265.13 the policy statement cited in the exclusion form was recinded and replaced on 4/9/15 with policy statement 4500.11. PS 4500.11 requires 1) an individual inquiry to be conducted; 2) the inmate must pose a realistic threat to the public or running of the iunstitution; and 3) the conclusion to exclude must not be based on "general categorizations." So I then seen that the implimentation of this exclusion can only be made at the AW or higher level of authority. So I checked to see the signature on the form and noticed AW Justice signed the exclusion. AW Justice is the direct supervisor of Defendant Cole.

7. Later on 4/19/22 I saw that AW Justice had emailed me back about the photocopy issue upon reviewing her response rubberstamped the judgement of the Education supervisor Defendant Evans and the Unit Manager Defendant Cole I began to question AW Justice about her concluding to exclude me from the email system. See Exhibit 6-- email exchange between me and AW Justice. Asking her when did she have time to investigate and discover who my co-defendants were to review their PSRs, how was an individuaal review conducted if the BOP doesn't even have a PSR for me, what has happened in the last 30 days to warrant my exclusion, how did she find a news article from 3 years ago about my case, and was it her practice to impose punishments on inmates prior to the Court issuing an actual punishment e.g. restitution payments? As of today AW Justice still has not responded and as of 4/21/19 my email service has not been restricted. Also I have not made AW Justice aware that I know 5265.13 has been recinded and cannot be enforced nor that I know Unit Manager level in the chain of command cannot make such decisions as who to exclude from the email system.

8. On 4/21/22 at 5:30 pm the entire institution was placed on lockdown due to an officer being assulted on another unit and I have not had the ability to see if my email service has been restricted. If it is I will futher amend this complaint to include such facts and injuries. The email system is my primary means of communicatrion with stand-by attorney in my criminal case as well as my mitigation specialist and make shift paralegals. My sentencing is currently scheduled for May 18th @10am.

On April 25, 2022 after the inmate population was released from
the weekend lockdown I did attempt to view my emails that had
came thru over the weekend and when I signed into the Trulincs
terminal I was prompted by the system that I did not have access
to use the email/public messaging feature.

As stated above there is no pre-trial detainee that has lost
their access to the TRULINCS public messaging system for the
reasons cited by the defendants, it is currently other sex offenders
waiting to be sentenced and have not been striped of their email
prividledges, and in fact there is another inmate on my housing
unit that has also been charged with sex trafficking under
18 U.S.C. 1591 and specific conduct alleges his use of backpage.com
to "offer services of his victim" and this inmate who's co-defen-
dants have been sentenced and shipped out to various prisons in
B.O.P.  is currently awaiting sentencing and still has access to
his TRULINCS email service. Not only so this same inmate has been
awaiting sentencing for longer then I have been in the building,
meaning he was convicted well before I was indicted but yet the
outdated policy is being enforced upon me. Clearly retailation for
me filing the motion for leave and funds for photocopies in my
criminal case. An arbitrary and capricious abuse of discretion
and abuse of the legal process for seeking the courts attention to
a matter.

As of April 28, 2022 legal copies continue to be denied to Mr.
Jones and Exhibits 4 & 5 cannot be copied however originals have
been filed to District Court on Mr. Jones' criminal case. United
States v. Jones, Crim. No. 18-193-03 (E.D.Pa 2018) Those exhibits
were the affidavit of Darrell Wylie and the notice of exclusion
from electronic messaging program.

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

C.    What date and approximate time did the events giving rise to your claim(s) occur?

See Attached pages entitled "Facts"

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Attached pages entitled "Facts"

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Mental and Emotional Distress causing migrains and
insomnia and elevated heart rate. Anxiety attacks
and loss of ability to file motion highlighting
government misconduct on public docket, loss of
ability to comply with 18 U.S.C. § 3509(d) and
file motion on public docket due to photos of
victims in exhibits need copies to redact a copy
Injuries sustained after 4/25/22: Loss of contact with stand by counsel,
mitigation specialist, and other family members who cannot answer phone
during business hours, and other legal resourses who only use email.

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. Injunction enjoining defendants
from denying pro se inmates legal copies based on sufficiency of
funds to cover copy fees.
Defendant Evans--Nominal Damages of $1 and Punitive Damages of
$50,000//Defendant Nelson--Nominal Damages of $1 and Punitive
Damages of $10,000//**Defendant** Gallagher Nominal Damages of $1 and
Punitive Damages of $25,000//Defendant Cole Nominal Damages of $1
and Punitive Damages of $25,000 these figures represent the
different levels of culpability and/or intention as well as the
need to deter futher violation and disregard of rights of inmates.
An added $100,000 for retaliation jointly and severaly by all defendants
and for newly added defendant AW Justice $1 Nominal damages and $5000
Punitive Damages

**VII.  Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

FDC Philadelphia

_____

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

All Claims

_____

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X] Yes

[ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[ ] Yes

[ ] No

E.   If you did file a grievance:

1.   Where did you file the grievance?

The grievance was given to Unit Case Manager Mendek

2.   What did you claim in your grievance?

That refusing a pro se inmate legal copies due to the inmate having insufficient funds to cover cost was a violation of the constitution and C.F.R § 543.11

3.   What was the result, if any?

The person responsible to officially file it, the unit counsler refused to officially file it. The grievance was essentially trashed.

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

The process is legally completed as there is no process due to officials refusing to file the grievance.

F.    If you did not file a grievance:

    1.    If there are any reasons why you did not file a grievance, state them here:

    2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.  Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.  If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

Plaintiff(s)  _____

Defendant(s)  _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.  Docket or index number

_____

4.  Name of Judge assigned to your case

_____

5.  Approximate date of filing lawsuit

_____

6.  Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.  _____

7.  What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

_____

C.  Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

☐ Yes

☒ No

D.  If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit
    Plaintiff(s) _____
    Defendant(s) _____

2.  Court *(if federal court, name the district; if state court, name the county and State)*

    _____

3.  Docket or index number

    _____

4.  Name of Judge assigned to your case

    _____

5.  Approximate date of filing lawsuit

    _____

6.  Is the case still pending?

    ☐ Yes

    ☐ No

    If no, give the approximate date of disposition _____

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    April 18, 2022

Signature of Plaintiff

Printed Name of Plaintiff    Anthony W. Jones, II

Prison Identification #    69850-066

Prison Address    P.O. Box 562

Philadelphia                    PA        19105
*City*                              *State*       *Zip Code*

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

*City*                              *State*       *Zip Code*

Telephone Number

E-mail Address

Anthony Jones 68850-066
Federal Detention Center
P.O. Box 562
Philadelphia, PA 19105



RECEIVED
MAY 4 2022

Legal Mail

U.S.M.S.
X-RAY

Clerk of the Court
For the U.S. District Court
United States Courthouse
601 Market Street
Philadelphia, PA 19106






